UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

JAVONE SMITH ,

           Plaintiff,           Case No. 1:23-cv-601

v.                                         Honorable Ray Kent

SCOTT WRIGGLESWORTH et al.,

           Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff initiated this action by filing his complaint in the United States District Court for the Eastern District of Michigan. In an order (ECF No. 5) entered on June 5, 2023, that court transferred the matter to this Court for further proceedings. In an order (ECF No. 8) entered on June 12, 2023, the undersigned granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 9.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendants Wrigglesworth, Book, and Nemeth for failure to state a claim. The Court will dismiss Plaintiff's state law claims against Defendants Wrigglesworth, Book, and Nemeth without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against the remaining Defendants. Plaintiff's individual capacity Eighth and Fourteenth Amendment claims against Defendants Southworth, Daenzer, Earle, Wallen, Thrasher, Vail, Shoyinka, Zurek, Wilson, Viher, Tyler, and Dormer remain in the case, and the Court will serve the complaint against those individuals.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. The events about which he complains, however, occurred while Plaintiff was incarcerated at the Ingham County Jail in Lansing, Michigan. Plaintiff sues the following individuals: Sheriff Scott Wrigglesworth, Undersheriff Andrew R. Book, Chief Deputy Darin Southworth, Field Services Captain Andy Daenzer, Corrections Captain Robert Earle, Medical Assistants Tia Wallen and Crystal Thrasher, Medical Director Dr. Adenike Shoyinka, Corrections Healthcare Administrator Kelli Zurek, Jail Pharmacy Nurse Renee Nemeth, Jail Nurses Kenneth Tyler and Michelle Dormer, and Nurse Practitioners Elizabeth Wilson and Deborah Viher. Plaintiff suggests that he is suing all Defendants in their official and personal capacities. (ECF No. 1, PageID.2–3.)

Plaintiff alleges that on October 5, 2020, he was sent to the emergency room after an altercation. (*Id.*, PageID.3.) X-rays revealed that Plaintiff's hand was fractured. (*Id.*) Plaintiff was referred to a hand surgeon, and that referral was documented by Physician Assistant (PA) Rachael Courter (not a party) when Plaintiff returned to the Ingham County Jail. (*Id.*) On October 12, 2020, Defendant Wallen documented that Plaintiff was scheduled to see a hand surgeon on October 15, 2020. (*Id.*)

Plaintiff had surgery on October 27, 2020, and a follow-up appointment was scheduled for November 11, 2020. (*Id.*, PageID.4.) Plaintiff alleges, however, that he was never taken to the follow-up appointment, so PA Courter had to remove the sutures on November 12, 2020. (*Id.*)

On December 4, 2020, PA Courter documented Plaintiff's complaints about pain. (*Id.*) On December 15, 2020, "it was documented that [Plaintiff] was still in pain and there was continued swelling." (*Id.*)

On January 11, 2021, PA Courter saw Plaintiff after another altercation and noted that Plaintiff's "5th digit had recently been repaired with pins and [that] [P]laintiff had an upcoming visit with Dr. Katranji." (*Id.*) On January 15, 2021, Defendant Thrasher rescheduled that appointment for February 17, 2021. (*Id.*)

On February 3, 2021, Defendant Thrasher cancelled Plaintiff's scheduled appointment. (*Id.*) She noted that the appointment was cancelled "pursuant to management." (*Id.*) According to Plaintiff, Defendants Southworth, Daenzer, Earle, Shoyinka, Zurek, and Vail were all involved in the cancellation. (*Id.*) Plaintiff also mentions that Defendants Tyler and Wallen were involved in the cancellation of his appointment. (*Id.*, PageID.5.)

On March 2, 2021, Plaintiff saw Defendant Viher for complaints of pain in the tip of his finger. (*Id.*, PageID.4.) Plaintiff told Defendant Viher that the "pin [was] pressing outward and [poking] through causing blood to drain out." (*Id.*) Plaintiff suggests that Defendant Viher documented that "they did not know if [Plaintiff] had a wire, screw[,] or pin." (*Id.*)

Plaintiff alleges further that he repeatedly saw Defendant Thrasher during this time period, and that she "never once administered any medical attention that was necessary knowing that [Plaintiff] was in fact in pain." (*Id.*) According to Plaintiff, Defendant Thrasher "even acknowledged in her own documented reports that the condition of [Plaintiff's] 5th digit was worsening." (*Id.*)

On June 9, 2021, Plaintiff saw Defendant Tyler, who documented that Plaintiff was in pain. (*Id.*) Plaintiff alleges further that Defendant Wilson denied "X-rays and even documented that [Plaintiff] requested to speak to shift command." (*Id.*) Defendant Wilson noted that, based upon Plaintiff's history, he would be "treat[ed] first with conservative measures and only sen[t] out if absolutely necessary." (*Id.*)

On September 27, 2021, Plaintiff was seen because of "pus coming out of [his] finger for a week." (*Id.*) Plaintiff said that his finger felt like it was "on fire." (*Id.*) Plaintiff alleges that "[a] culture and sensitivity," as well as antibiotic treatment, were ordered, but that he did not receive this "as stated by" Defendant Wilson. (*Id.*) Plaintiff suggests that throughout his time at the Ingham County Jail, medical personnel, including Defendants Viher, Tyler, Wilson, and Dormer documented Plaintiff's pain and suffering, but did nothing to treat it and knowingly left the pin in Plaintiff's hand for over a year. (*Id.*, PageID.7.)

Plaintiff was eventually transferred to SRF, where he saw Registered Nurse Carla Gross (not a party) on June 3, 2022. (*Id.*, PageID.5.) She noted that Plaintiff's pinky finger was infected "as a result of a rod he's had in his finger for 3 years but that was only [supposed] to be in there for a year." (*Id.*) Plaintiff alleges that he ultimately had to remove the pin himself. (*Id.*) Moreover, Nurse Practitioner Laura Brown (not a party) documented that Plaintiff needed to have a second surgery "to medically improve overall function." (*Id.*)

Plaintiff has attached an affidavit from PA Courter, now PA Smith, to his complaint, and that affidavit provides more context for his claims. PA Smith states that she was the primary provider who referred Plaintiff to the Katranji Hand Center "for evaluation and treatment of a displaced fracture of the proximal phalanx of the right 5th digit." (ECF No. 1, PageID.9.) PA Smith indicates that when Plaintiff had surgery on October 27, 2020, a K-wire was placed for joint stabilization. (*Id.*) PA Smith avers that K-wires are temporary and that most K-wires are removed "between 4–6 weeks following surgery." (*Id.*, PageID.10.)

According to PA Smith, Plaintiff's follow-up appointment that was scheduled for November 11, 2020, was delayed and rescheduled because of "constraints place[d] by COVID." (*Id.*) PA Smith notes that, according to Plaintiff's medical records, "no further attempts to

reschedule this appointment were ever made" while Plaintiff remained at the Ingham County Jail. (*Id.*) Plaintiff remained at the Ingham County Jail until January 6, 2022, "nearly 15 months status post surgery, with the K-wire still in place." (*Id.*) Plaintiff removed the K-wire himself on August 13, 2022, 22 months after surgery, after he made "numerous requests" for medical staff to remove it. (*Id.*) Per Plaintiff's medical records, he "had at least 2 accounts of skin infections (cellulitis), numerous documented accounts of ongoing pain with decreased function[,] and ultimately ankylosis[2] of the joint." (*Id.*, PageID.10–11.) Plaintiff underwent the second surgery in November of 2022 because of "ankylosis of the finger." (*Id.*, PageID.11.)

Based on the foregoing, Plaintiff asserts violations of his Eighth and Fourteenth Amendment rights premised upon the denial of adequate medical care for his finger. (*Id.*, PageID.3.) Plaintiff also asserts claims of medical malpractice and gross negligence pursuant to Michigan state law. (*Id.*, PageID.3–6.) Plaintiff seeks a finding that Defendants violated his rights, as well as punitive damages in the amount of $10 million. (*Id.*, PageID.8.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

---

[2] Ankylosis refers to the "[s]tiffness or, more often, fusion of a joint." *See* Definition of Ankylosis, https://www.rxlist.com/ankylosis/definition.htm (last visited July 17, 2023).

7

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

#### 1. Official Capacity Claims

Plaintiff suggests that he is suing Defendants in their official and personal capacities. (ECF No. 1, PageID.2–3.) Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)). An official capacity suit is to be treated as a suit against the entity itself. *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.

1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *see also Graham*, 473 U.S. at 165–66.

Here, Defendants represent Ingham County. Thus, Plaintiff's suit against them in their official capacities necessarily intends to impose liability on the county. Ingham County, however, may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell*, 436 U.S. at 694. Instead, a county is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire*, 330 F.3d at 815 (6th Cir. 2003). "Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the Sixth Circuit has explained that a custom "for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.* at 508. Here, Plaintiff's complaint is devoid of facts supporting a claim that his constitutional injury was the result of an official policy or custom employed by Ingham County. The Court, therefore, will dismiss Plaintiff's official capacity claims against Defendants.

      **2.**      **Individual Capacity Claims**

             **a.**      **Claims Against Defendants Wrigglesworth, Book, and Nemeth**

Plaintiff has named Sheriff Wrigglesworth, Undersheriff Book, and Jail Pharmacy Nurse Renee Nemeth as Defendants in this matter, but he does not make any factual allegations against these individuals. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Wrigglesworth, Book, and Nemeth in the body of his complaint. His allegations against them, therefore, fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that

the pleader is entitled to relief"). For that reason alone, Plaintiff's claims against Defendants Wrigglesworth, Book, and Nemeth are properly dismissed.

Moreover, it appears that Plaintiff may have named Wrigglesworth and Book as Defendants because of their supervisory positions as Sheriff and Undersheriff, respectively. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v.*

11

*Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendants Wrigglesworth and Book encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in that conduct. As noted above, Plaintiff does not allege any facts whatsoever regarding their involvement in his alleged injury. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Wrigglesworth and Book were personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Accordingly, for the reasons set forth above, Plaintiff's individual capacity claims against Defendants Wrigglesworth, Book, and Nemeth will be dismissed.

### b. Claims Against the Remaining Defendants

As noted *supra*, Plaintiff asserts Eighth and Fourteenth Amendment claims premised upon the failure to provide adequate follow-up care for his finger following his surgery.

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 556 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Both "[t]he Eighth and Fourteenth Amendments are violated 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Id.* (citations omitted). The application of

12

the proper constitutional right depends on the nature of Plaintiff's detention: the Eighth Amendment applies to convicted prisoners and the Fourteenth Amendment applies to pretrial detainees. *Id.* (citations omitted).

PA Smith's affidavit indicates that Plaintiff remained at the Ingham County Jail until January 6, 2022. (ECF No. 1, PageID.10.) MDOC records show that Plaintiff is serving numerous sentences imposed by several counties, including two sentences imposed by Ingham County on December 2, 2021. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=620214 (last visited July 17, 2023). Thus, because it appears that Plaintiff was both a pretrial detainee and a convicted inmate during the relevant period of time, the Court will analyze his claims under both constitutional provisions.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). However, in *Kingsley v. Hendrickson*, the Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. 576 U.S. 389, 392–93 (2015). *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial-detainment context[s]." *Brawner*, 14 F.4th at 592.

Subsequently, in *Brawner*, the Sixth Circuit modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness. *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to demonstrate deliberate indifference, "[a] pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* at 596-97 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)); *see also Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023) (affirming that *Kingsley*, as interpreted by *Brawner*, required courts to "lower the subjective component from actual knowledge to recklessness"). A pretrial detainee must prove that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted).

Plaintiff has adequately alleged that he had an objectively serious medical need premised upon the fact that his follow-up appointments with the hand specialist were cancelled and that he received no care for the pain he experienced because of the pin or K-wire not being removed for

14

well over a year. Moreover, Plaintiff suggests that Defendants Thrasher, Wilson, Viher, Tyler, and Dormer personally denied Plaintiff care, and that Defendants Southworth, Daenzer, Earle, Wallen, Thrasher, Vail, Shoyinka, Zurek, and Tyler were personally involved in the decision to cancel Plaintiff's follow-up appointment without ensuring that it was rescheduled.[3] At this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to him, applying either the Eighth Amendment or Fourteenth Amendment standard to Plaintiff's claims, the Court may not dismiss Plaintiff's medical care claims against Southworth, Daenzer, Earle, Wallen, Thrasher, Vail, Shoyinka, Zurek, Wilson, Viher, Tyler, and Dormer on initial review.

### B. State Law Claims

Plaintiff also alleges medical malpractice and gross negligence claims pursuant to state law against all Defendants. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for violations of state law, *see Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995), and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner," *Estelle*, 429 U.S. at 106.

---

[3] The Court recognizes that, generally, administrative or custody officials, such as Defendants Southworth, Daenzer, and Earle, who have no training or authority to supervise healthcare officials cannot be held liable for the healthcare officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (concluding that a custody officer was entitled to rely on the medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) (noting that "if a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials). Here, however, Plaintiff explicitly alleges that these individuals were involved in the decision to cancel his follow-up appointment, thus suggesting that they "intentionally deni[ed] or delay[ed] access to medical care or intentionally interfere[ed] with [Plaintiff's] treatment." *Estelle*, 429 U.S. at 104–05.

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because the Court has dismissed Plaintiff's federal claims against Defendants Wrigglesworth, Book, and Nemeth, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against those individuals. Such claims will be dismissed without prejudice to Plaintiff's ability to bring those claims in state court. Because Plaintiff continues to have pending federal claims against Defendants Southworth, Daenzer, Earle, Wallen, Thrasher, Vail, Shoyinka, Zurek, Wilson, Viher, Tyler, and Dormer, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against them.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Wrigglesworth, Book, and Nemeth will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants Wrigglesworth, Book, and Nemeth will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court will also dismiss, for failure to state a claim, Plaintiff's official capacity claims against the remaining Defendants. Plaintiff's individual capacity Eighth and Fourteenth Amendment claims against Defendants Southworth, Daenzer, Earle, Wallen, Thrasher, Vail, Shoyinka, Zurek, Wilson, Viher, Tyler, and Dormer remain in the case, and the Court will serve the complaint against those individuals.

An order consistent with this opinion will be entered.


Dated: July 31, 2023              /s/ Ray Kent
                                  Ray Kent
                                  United States Magistrate Judge